Katherine T. Corrigan, SBN 132226
CORRIGAN WELBOURN & STOKKE,
A PROFESSIONAL LAW CORPORATION
4100 Newport Place, Suite 550
Newport Beach, CA 92660
Telephone: 949-251-0330
Facsimile: 949-251-1181
E-Mail:  kate@cwsdefense.com
Attorney for Defendant, ANIA LOWENTHAL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANIA LOWENTHAL,<br><br>Defendant | Case: 8:23-cr-00124-CJC<br><br>DEFENDANT'S SENTENCING POSITION; EXHIBITS A-B<br><br>Sentencing Date: March 4, 2024<br>Hearing Time: 2:30 p.m. |

**TO THE HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEYS OF RECORD, BENJAMIN LICHTMAN, AND UNITED STATES PROBATION OFFICER HANNAH ROBERTS:**

Defendant ANIA LOWENTHAL (hereinafter the "***Defendant***"), by and through counsel of record, Katherine Corrigan, hereby files Defendant's Position Re Sentencing in the above-entitled matter.


DATED: February 25, 2024        ____/s/_____

Katherine Corrigan
Attorney for Defendant

1

# I.

## INTRODUCTION

Defendant respectfully submits this memorandum to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a) in light of *United States v. Booker*, 125 U.S. 738 (2005).  The Defendant concurs with  the Government that the appropriate total adjusted offense level is 15.  The Defendant concurs with probation that a substantial variance is appropriately applied.  A sentence of probation is consistent with the statutory purposes of sentencing.

The Defendant is unique in her background, education, professional experience, community service, commitment to those in need, commitment to the care of her aging ill mother (who is incapable of caring for herself), and her significant ties to her community.  The letters of support that are attached to this sentencing memorandum verify and demonstrate the Defendant's personal history, traits, and characteristics.

The Defendant demonstrated from an early stage of the government's investigation that she is committed to "righting the ship."  Upon request, the Defendant resigned from her responsibilities in the trust and foundation that is described in the PSR, and quitclaimed the 2 properties at issue back to appropriate entity.  Legal counsel was retained to address issues relating to the foundation, and is currently counsel for the foundation.  The transition has been smooth and without hesitation.

The Defendant regrets the day that she engaged in her wrongful conduct.  Her conduct has haunted her.  She is deterred and has demonstrated to others that righting a wrong is powerful redemption and beneficial to the community.  Her actions demonstrate deterrence and that she poses no danger to the public and will not recidivate. Her community service is ongoing and unique.  She takes great pride in assisting parents of young cancer patients with connecting with services and comfort, and in assisting veterans with their basic needs and support.  Her and lack of criminal

2

1    history demonstrate that she is a woman who can be trusted to remain in the
2    community.  Imprisonment is not necessary.
3        The Defendant has suffered significant collateral consequences because of her
4    offense conduct and conviction.  She has lost her job and expects to lose her license to
5    practice law.  However, during this time, she has taken her talents and helped those in
6    need.  Despite these setbacks, her family, colleagues, and others stand behind her.  The
7    letters of support attached to this sentencing memorandum are consistent in their
8    message and portrayal of her.  See Exhibit A.
9        The Defendant requests that the Court impose a sentence of probation with the
10   terms and conditions set forth in the sentencing recommendation letter found at Docket
11   entry 15.  The terms and conditions of probation recommended by probation are
12   adequate to promote respect for the law, satisfy the need to protect the public from
13   Defendant, and serve as general and specific deterrence.  This proposed sentence
14   recognizes how Defendant's personal history and characteristics fit well within the
15   factors set forth in 18 U.S.C. §3553 (a).  The proposed sentence is adequate to achieve
16   the goals of sentencing.
17       After full analysis of the sentencing factors in this case, the information provided
18   by the defense and probation, the Defendant requests that the Court impose the
19   following sentence and make the following recommendations:

20       1.  5-year probation
21       2.  Restitution in the amount of $644,579.00 to the Internal Revenue
22           Service
23       3.  Complete 500 hours of community service
24       4.  Imposition of no fine
25       5.  Waive interest on the restitution order
26       6.  Imposition of a $300 special assessment
27       7.  The remaining conditions of supervised release articulated in the
28           sentencing recommendation letter found at Docket entry 15.

3

Defendant's Sentencing Position Memorandum

The requested sentence is based on the factors cited in this memorandum, the Presentence Report ("PSR"), the probation officer's sentence recommendation in the PSR, and the Defendant's personal history and characteristics, community service and the Defendant's lack of criminal history. The Defendant believes that such a sentence is reasonable considering the facts of this case.

**II.**

**PROCEDURAL BACKGROUND AND DEFENDANT'S COMMENTS**

    **A.** _**Initial Appearance.**_

On September 25, 2023, pursuant to a summons, the Defendant appeared in court. She was released on her own recognizance. The Defendant was "processed" by the United States Marshal's office; therefore, she has 1 day of custody credit.

    **B.** _**The Plea Agreement and Calculation of the Applicable Sentencing Guidelines.**_

The Defendant, with the assistance of counsel, entered into a plea agreement with the government. On November 1, 2023, the Defendant entered a guilty plea to Counts 1-3 of the Information and waived her right to Indictment. The information charges her with 3 counts of violations of 26 U.S.C. §7206 91) – subscribing to a false tax return.

The Plea Agreement contemplates a base offense level of 20 (U.S.S.G. §§2T1.1 (a) (1) and 2T4.1 (H)). A 3-level reduction for acceptance of responsibility (U.S.S.G. §3E1.1) is also contemplated.

Although the Plea Agreement referenced the "zero" point offender 2-level reduction (effective November 1, 2023, U.S.S.G. §4 C1.1). The total adjusted offense level is **15** (prior to any further departures or variances). Assuming that the criminal history category is I, the low-end of the advisory sentencing range is **18-24** months imprisonment.

The Plea Agreement also called for Defendant's resignation as Trustee for the R.D.L., and to execute a quitclaim deed in favor of the R.D.L. Family Trust for the 2

4

1  properties listed in the plea agreement.  The Defendant accomplished these

2  requirements in a timely manner.

3      The Plea Agreement contemplates restitution in the amount of $644,579.00 to the

4  IRS.

5      The PSR accurately describes charges and the plea agreement in this Case (See

6  PSR page 4, ¶¶1-7).

7  **C. _The Government's Position._**

8      The Government has filed its sentencing position and has recommended a term of

9  prison of 18 months.

10  **D. _Minimum and Maximum Possible Sentence_**

11     There is no mandatory minimum sentence in this case.

12     The statutory maximum sentence that the Court can impose is 9 years

13 imprisonment, a 3-year period of supervised release, substantial fines, and a mandatory

14 special assessment of $300.

**III.**

**ACCEPTANCE OF RESPONSIBILITY**

17  **A.   _Defendant's Acceptance of Responsibility:_**

18     The Defendant has accepted responsibility for her conduct and will make a further

19 statement to the Court at the time of sentencing.  She cooperated with the Government

20 with the requirements of the Plea Agreement.  She conserved the resources of the

21 Government and Court by entering a guilty plea at a very early stage of the proceedings,

22 waiving her right to Indictment, and entering his guilty plea to a 3 count Information.

23 She accepted responsibility for her offense conduct without hesitation, and continues to

24 accept responsibility for her offense conduct. She is following her release conditions.

25 She has not obstructed justice.

26     It is important to note that the Defendant understands that there is no excuse for

27 her conduct, but the life circumstances she found herself in caused her to make

28 decisions that she otherwise would not have made.  (See PSR page 6, ¶¶24-25.)

5

# IV.

## THE PRESENTENCE REPORT AND GUIDELINE
## ANALYSIS ISSUES.

### A.  *Defendant's Comments Regarding the PSR:*

### 1.  *Offense Level Computation*

The Defendant concurs with the Government that an additional 2-level increase in offense level is not appropriately applied in this Case.  The Government is not asking that it be applied and it is not contemplated by the Plea Agreement (see Government sentencing position, Docket entry 18.)

### 2.  *Recognition of Mitigation.*

The PSR analysis of the 18 U.S.C. §3553(a) factors is consistent with the Defendant's history and characteristics.  Although the Defendant appears to have it all – she does not.  Her childhood and upbringing are nothing short of an unreported case of child abuse.  As the PSR rightly points out, the Defendant suffered at the hands of her father. She suffered from a total lack of emotional support from her mother.  She comes from a family who endured tragedy (the illness and untimely death of the Defendant's young sister and the family's preference to sweep under the rug what had happened), parents from an essentially arranged marriage, and a bully for a father.  The Defendant and her mother both suffered.  The Defendant's mother was emotionally disconnected, offered no warmth or motherly guidance.  Yet, the Defendant has provided her mother with a home, the master bedroom (at the mother's demand) and, now, constant care and companionship.  Her mother is unable to care for herself.  The Defendant is now confronted with the care of her mother, after her mother provided her with not such loving care.   The PSR offers greater detail.

The Defendant and her husband have been together since their teens.  Both grew up in dysfunctional households.  The Defendant's husband entered the military at an early age and has, unfortunately suffered significant physical and mental health challenges because of his service to our Nation.  The detail of his health issues is found

6

in the PSR.  Both the Defendant and her husband are well educated.  She has attended

several universities, such as UNLV, University of Washington, and Boston University.

He has also attended universities, which include out of state universities and UCLA.

The Defendant and her husband have instilled in their children the importance of

education and community service.  They believe that giving back to the community is

critical.  The Defendant, now unemployed, uses her time productively by being involved

in community service.  The PSR and Exhibit B, along with the letters comprising

Exhibit A, verify and demonstrate her unique contribution as a community servant.  Her

commitment to community service sets her apart.  The community she serves will suffer

if she is incarcerated.

## V.

## SENTENCING FACTORS AND ANALYSIS

### 1.  Defendant's Personal Characteristics and History:

#### a.  Childhood and Family Structure, Education and Community Service.

The Defendant's personal history, upbringing, and family life are well described in

the PSR.   There are traumas that she has suffered and are described in paragraphs 56-65

of the PSR.  The instant case has caused strain on her family and marriage, and greatly

impacted her earning power and contribution to the household.

The Defendant has many supporters in her life.  Although the offense conduct

has had negative collateral consequences on her ability to practice law, she has been able

to provide the Court with letters of support that are a window into who the Defendant

really is and how she positively impacts her community.

The letters reveal consistent observations of the Defendant's personal

characteristics.  They include:  volunteerism, charitable works, intelligence,

trustworthiness, support of others, selflessness, caring, hardworking, and volunteering

countless hours. They reinforce the notion that the Court need not incarcerate the

Defendant.  The Defendant has committed herself to her community, and family.  The

7

offense conduct is clearly an aberration for her.  She is deeply impacted by her terrible decision making, and actions.  Although one might think that the Defendant would feel sorry for herself, she is no pity party.  The Defendant is most concerned about not being there for those in need.  She will endeavor to find ways to help others and to share her knowledge and intelligence.

As is also reflected in the letters, the Defendant has been a community volunteer for years.  The community service reflects the Defendant's character and desire to do good deeds.  This information further demonstrates that the Defendant is deterred, poses no danger to the community, is unlikely to recidivate, and can be trusted to be placed on supervised release without a prison sentence.

**b.  <u>Criminal History – Defendant has Zero Criminal History Points</u>**

The Defendant has zero criminal history points and is within Criminal History Category I.  (See PSR page 8-9, ¶¶45-52.)

**c.  <u>Defendant's Physical, Mental and Emotional Health.</u>**

The Defendant's health is generally good. (See PSR page 13, ¶¶79-81.)

**d.  <u>History of Substance Abuse</u>:**

The Defendant uses alcohol to deal with the stressors in her life.  The sentence recommendation letter addresses these issues. She is interested in gaining better insight into her issues and seeking treatment (See PSR pages 12-13, ¶¶84-87.)

**e.  <u>Defendant's Education and Employment History.</u>**

The Defendant is very well educated.  She graduated from high school, college, and law school.

She is currently unemployed and uses her time productively.  She volunteers 3-4 days per week.  (See Exhibits A and B.)

**f.  <u>Defendant's Financial Condition and Ability to Pay a Fine:</u>**

The Defendant's financial condition has been negatively impacted because of her offense conduct.  Her income has greatly dropped and it will not likely improve.  The

8

probation officer has determined that the Defendant cannot afford to pay a fine.  (See PSR pages 14-17, ¶¶95-101.)

## VIII.

## POST-BOOKER SENTENCING CONSIDERATIONS

## 18 U.S.C. Sections 3553(a) (1)-(7) Humanization Factors

In light of *United States v. Booker*, 125 U.S. 738 (2005), the sentencing guidelines are advisory and are but one factor to be considered by the Court in fashioning an appropriate sentence, to wit, a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a).  The Sentencing Guidelines are only a starting point for the Court in crafting a reasonable sentence.  Indeed, under Section 3553(a), the district courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of sentencing.  As a result, the sentencing guideline range is no longer binding on the Court, as the Sentencing Guidelines are merely advisory today and only one of several factors to be considered in determining sentence.  *Booker*, 124 S.Ct. at 764-65.  18 U.S.C. Sections 3553(a) (1)-(7) provide the Court with other factors to include in the fashioning of a reasonable sentence:

1.  the nature and circumstances of the offense and the history and characteristics of the defendant;

2.  the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.  the kinds of sentences available;

4.  the kinds of sentence and the sentencing range established for--

9

Defendant's Sentencing Position Memorandum

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced (***the Sentencing Guideline Range***);

5.  any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is sentenced;

6.  the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7.  the need to provide restitution to victim(s) of the offense.

*Id., 18 U.S.C. Sections 3553(a) (1)-(7).*

Although the Sentencing Guidelines provide a starting point for the Court's sentencing analysis, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 50 (2007).   The Court's ultimate duty is to ensure that the sentence imposed reflects the principles set forth in 18 U.S.C. §3553 (a).  *See Nelson v. United States,* 555 U.S. 350, 351 (2009).  The "overarching provision" of §3553 (a) is "to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in §3553 (a) (2)."  *Kimbrough v. United States,* 552 U.S. 85, 111 (2007).  What is more, "the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 377 U.S. 241, 247 (1949).)

**IX.**

**DEFENDANT'S POSITION RE:**
**SENTENCING FACTORS AS APPLIED TO DEFENDANT**

1.  **The proposed sentence considers the personal history and characteristic of the Defendant and the nature of the offense.**

10

The Defendant's personal history and characteristics are clearly outlined in the PSR and are summarized in the preceding pages. The letters that are offered by the Defendant demonstrate to the Court that she possesses the traits that support leniency. The punishment she is requesting the Court impose is reflective of her past personal characteristics and her post offense conduct, rehabilitation, and community service. Her ongoing community service demonstrates her commitment to righting her wrongs. The Defendant has clearly made poor decisions, and sorely regrets her offense conduct. Her offense conduct has had a ripple effect on her life, those she loves, and the groups she serves through community service. It has caused trauma to her family. She remains committed to building a strong future and fulfilling her commitment to the community and her family. Her moral compass is intact – as reflected in the letters of support attached hereto as Exhibit A.

The Defendant is remorseful for her offense conduct. Her life has been committed to doing good, being kind, productive and law abiding. Her pre- and post-offense conduct demonstrate that she can live a crime free life, be productive and to give back to community.

The letters of support that are attached hereto as **_Exhibit A_** also support the position that the Defendant is redeemable and a person that has positive qualities. The letters provide a glimpse into the Defendant's characteristics and reputation. They also let the Court know that the Defendant is remorseful, has integrity and is a productive member of society. The letters consistently express the Defendant's positive qualities and her commitment to a law-abiding lifestyle.

She accepted responsibility at an early stage.

**2. <u>The proposed sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.</u>**

The proposed sentence reflects the seriousness of the offense. It will serve to promote respect for the law and provide more than just punishment. The proposed sentence also considers the Defendant's mitigation factors, and early acceptance of

11

1    responsibility.  Significant terms and conditions of probation will promote respect for

2    the law. The significant variance reflected in the recommendation by Probation and her

3    complete lack of criminal history provide the path for the Court to grant probation.

4    The proposed sentence also recognizes the Defendant's post offense conduct,

5    productivity and commitment to her family, and community.  When combined, these

6    factors provide a path to the requested sentence.

7       **3.  <u>The proposed sentence does not create a disparity in sentencing among</u>**

8           **<u>similarly situated defendants.</u>**

9       The proposed sentence should not create a disparity among other defendants

10   who are similarly situated.  The requested sentence acknowledges Defendant's mitigating

11   factors, and other issues raised in this memorandum and the PSR.

12      **4.  <u>The proposed sentence affords adequate specific and general</u>**

13          **<u>deterrence to criminal conduct.</u>**

14      The proposed sentence affords both specific and general deterrence to criminal

15   conduct.  The Defendant is keenly aware of the sentence she now faces and the

16   implications of incarceration, and the collateral consequences her offense conduct has

17   created.  General deterrence goals are satisfied by the proposed sentence. The message

18   that this sentence will send is loud and clear - it is not worth it to engage in any criminal

19   conduct, and, as here, federal crimes.  The Defendant's acceptance of responsibility and

20   lack of any criminal history, ongoing community service, family and community ties, and

21   education are strong indicators that the Defendant is deterred.  Her post offense

22   conduct and cooperation with the terms of the Plea Agreement demonstrate that she is

23   deterred.  Her remorse is palpable.

24      **5.  <u>The proposed sentence protects the public from further crimes of the</u>**

25          **<u>Defendant.</u>**

26      The proposed sentence in this Case will surely protect the public from further

27   crimes by her.  Any sentence is significant to this defendant.  She is now facing the

28   prospect of a lengthy sentence.  She has never faced any period of prison time in her

12

life.  Significant terms and conditions of supervised release will provide with Defendant with structure and ensure the Court that if the Defendant does not comply, that she can suffer a serious sanction.  A longer sentence is not necessary to protect the public from defendant.

### 6.  <u>The Minimally-Sufficient Sentence in the Case</u>

As discussed above, ***Booker*** and Title 18 of the United States Code Section 3553(a)'s parsimony provision impose a statutory cap on sentences, despite what is recommended or prescribed by the sentencing Guidelines:  the sentence must be "sufficient, but not greater than necessary" to achieve the purposes of punishment. Section 3553(a) (2) provides that the Court shall impose a sentence ***sufficient but not greater than necessary*** to comply with Section 3553(a).

The proposed sentencing options proposed in this pleading adequately address the factors this Court must consider in fashioning a sentence in this Case.  Justice is served by this proposed sentence.  The proposed sentence achieves the goals of deterrence, incapacitation, and rehabilitation.

X.

<u>CONCLUSION</u>

After full analysis of the sentencing factors in this case, the information provided by the defense and probation, the Defendant requests that the Court impose the following sentence and make the following recommendations:

1. 5-year probation
2. Restitution in the amount of $644,579.00 to the Internal Revenue Service
3. Compete 500 hours of community service
4. Imposition of no fine
5. Waive interest on the restitution order
6. Imposition of a $300 special assessment

13

Defendant's Sentencing Position Memorandum

7. The remaining conditions of supervised release articulated in the sentencing recommendation letter found at Docket entry 15.

8. That the Defendant self-surrender to the designated Bureau of Prisons facility on or before August 20, 2024 at noon, and if not designated, then to report to the United States Marshal, located at United States Courthouse, 411 W. 4th Street, Santa Ana, California

9. That the Bureau of Prisons house the Defendant in a camp

10. That the Bureau of Prisons permit Defendant to participate in First Step Act programming.

DATED:  February 25, 2024          Respectfully submitted,


\_\_\_\_\_/s/_____
Katherine Corrigan

14

Defendant's Sentencing Position Memorandum

# **CERTIFICATE OF SERVICE**

I, Katherine Corrigan, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is Corrigan Welbourn & Stokke, APLC, 4100 Newport Place, Suite 550, Newport Beach, California 92660; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That on **February 25, 2024**, I caused to be transmitted via facsimile or e-mail to the person(s) below and addressed as follows:

DEFENDANT'S SENTENCING POSITION; EXHIBITS A-B

on the following persons:

AUSA Benjamin Lichtman Via email  Benjamin.Lichtman@usdoj.gov

Hannah Roberts, USPO        Via E-Mail Hannah_Roberts@cacp.uscourts.gov
United States Probation and Pretrial Services Office

This Certificate is executed on **February 25, 2024** at Newport Beach, California.  I

certify under penalty of perjury that the foregoing is true and correct.

Dated:  February 25, 2024                _____/s/_____
                                        Katherine Corrigan

Defendant's Sentencing Position Memorandum

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT B

Defendant's Sentencing Position Memorandum



December 1, 2023

Honorable Carney:

I have the pleasure of writing this letter of reference for Ania Lowenthal and her pending matter before you. My name is Penny Lambright, and I am the Founder & Chairman of the Board of *Patriots and Paws*, a nationally recognized 501(c)(3) Veteran charity located in Orange County.

Patriots and Paws provides our Veterans/Active Military/Reservists and their families with household items donated at no cost to them. This includes everything from refrigerators and washing machines, to beds, linens, and kitchenware. To date we have helped over 13,000 Veterans and have given away over $11 million in value of home goods and furnishings.

She has been volunteering for Patriots and Paws for a number of years now. I first met Ania in 2018 through mutual acquaintance who believed that there was a shared interest in serving our Veterans between her family, and Patriots and Paws and they were right.

As a wife of an Air Force Veteran, she understands the needs that military spouses have. She has been able on numerous occasions to share her experience with them. She shares her resources that she had gathered over the years of taking care of her husband's medical needs. She provides a form of support that only military spouses can share.

She understands the needs a combat Veteran with multiple deployments to Central America and the Middle East has. Her husband has been ill with Gulf War Syndrome for over twenty years, and she knows the intricacies of the VA and how benefits work, and most importantly, she had an unending desire to help Veterans and their families.

I have found that Ania's talent lies with assisting female Veterans, and Veteran dependents, on a weekly basis. I have seen first-hand her reach out to women in crisis and begin the healing process with them on site.

For the past three years, Ania has fed hundreds of veteran families each Thanksgiving, providing fresh organic fall vegetables for over 250 Veteran families annually to go along with our Thanksgiving Dinner bags that we give out each year. She has personally brought out her mother, husband, and her children to hand out boxes of fresh produce, breads, cookies, grocery store gift certificates, and even toys during the holidays.

She was instrumental in helping us acquire and purchase a 26' moving truck, which we now use for 100 percent of our free pickups. This year alone, with Ania's help, we have provided services to almost 2400 Veteran families.



Ania brings her time, talent and treasures when she volunteers with us. In speaking with other volunteers who have worked with her, she is respectful, helpful, and a team player and a confidence builder.

She has done many great things for the military community here in Southern California over the course of many years, but I want to be mindful and respectful of your time, and most importantly, the real purpose of this letter.

Ania came to me and admitted that she had taken money that she did not report, and as a result, she was now being federally prosecuted. Never once did Ania make any excuse for her actions, taking full responsibility, and she repeatedly expressed serious remorse for her poor judgement. I find this criminal action to be totally out of character for her, and I believe that the mistakes that Ania has made are not indicative of her character and moral compass. After my numerous conversations with her, I can say that she accepts that her own actions have caused a serious domino effect: she has lost her job, her law practice, and what she knew as her home.

After I expressed my own disappointment with Ania when she explained her criminal actions to me, she still accepted full responsibility and asked me to allow her to continue to volunteer. I told her that I would never turn my back on a Veteran, and that I would never turn my back on her.

Ania volunteers at Patriots and Paws every Tuesday, driving from south Orange County to Anaheim.

You honor, we work with the ONEOC and their Court Referral Program that they have, if Ania is given community service, she would have a place with us to continue to volunteer.

Thank you very much for allowing me the opportunity to share my thoughts with you.

If you have any questions, please don't hesitate to contact me.

Sincerely,

Penny Lambright
Founder and Chairman of the Board

| Warehouse Address: | | (Open Tuesdays, Thursdays, Saturdays) |
| --- | --- | --- |
| Facebook | https://www.facebook.com/pages/Patriots-and-Paws/283613748323930 | |
| Twitter | https://twitter.com/PatriotsandPaws | |
| Instagram | https://www.instagram.com/patriotsandpaws/ | |
| Linkedin | https://www.linkedin.com/company/patriots-and-paws/ | |

91

Recognized by the IRS as a 501(c)(3) Charitable Organization
www.PatriotsandPaws.org   info@PatriotsandPaws.or

8 (mailing address only)
F
3

Rob Rolan

**CALIFORNIA CENTRAL DISTRICT COURT CASE # 8:23-CR-00124**

Dear Judge Carney:

My name is Rob Rolan.  I, a fully disabled Navy veteran and California licensed attorney (inactive status due to disabilities), hereby submit this letter on behalf of my great friend, Ania Lowenthal, whom I met in 2018. Ania Lowenthal's remorse for her recent criminal actions is palpable and her loyalty fosters loyalty in return.

Understanding your time is valuable, please consider the following brief foundational points as background to my support of Ania Lowenthal.  I served in the United States Navy during years 1994 through 1998. Shortly after my honorable discharge as Petty Officer Third Class, my health slowly began to deteriorate. Despite my health concerns, I eventually graduated college and I was employed as a family law courtroom clerk during law school. I passed the California Bar Exam in 2008. For approximately a decade, I was employed as a civil litigator before becoming completely disabled as a result of service-connected disabilities.  As stated herein, Ania was instrumental in my obtaining 100% Veterans Affairs disability rating.

I met Ania in 2018 at St. John's Episcopal School where both our families' children attended. Since, at that time, my wife was employed by St. John's Episcopal School, I had the pleasure of frequently seeing Ania Lowenthal and her husband David Lowenthal on campus, constantly volunteering their time and resources to the school.  In fact, at one point, David Lowenthal and I together volunteered our time as flag football coaches to the students for a full season. Our families immediately became bonded for life and Ania Lowenthal helped my family survive when we could have lost everything.

At that particular point in time, my disabilities compelled me to ultimately cease employment and apply for a Veterans Affairs disability rating. Consequently, my lack of income, coupled with the Veterans Affairs' seemingly unfounded denials of my disability rating application, caused my family extreme hardship. I could not comprehend why my application was being denied and I needed assistance navigating the Veterans Affairs disability application process. Fortunately, Ania Lowenthal personally introduced me to the wonderful staff members at Tierney Center for Veteran Services, as well as those staff members at Veterans Legal Institute.

Tierney Center for Veteran Services assists veterans with issues involving housing, food, hygiene, transportation, employment services, behavioral health, emergency financial assistance and Veterans Affairs benefits. In conjunction with Tierney Center for Veterans Services, Veterans Legal Institute provides pro bono legal assistance to homeless and low income current and former service members. Ania Lowenthal personally facilitated each of my relationships with members of these wonderful assistance programs, which ultimately helped me properly navigate the Veterans Affairs disability application process and caused me to obtain a 100% disability rating. I could not have obtained my rating without her ongoing assistance and the help of her volunteer connections.

During the almost three years it took to obtain my 100% disability rating, as well as during the Covid pandemic, my family could not afford necessary living expenses. We were unable to pay our mortgage and we were unable to provide necessaries for our children. Without hesitation, Ania Lowenthal constantly delivered to my family countless groceries and office supplies so my children had school supplies and my wife was able to work from home. She never asked for anything in return and she continued to assist my family like clockwork week after week. We could not have overcome this dire time without her unconditional love and generosity.

I have always witnessed Ania Lowenthal to be a person with the utmost character, exhibiting traits such as integrity, responsibility, compassion and forgiveness. She has always been a pillar of the local communities and her ethics resonate beyond these boundaries. Imagine my surprise when Ania Lowenthal admitted facts surrounding her indictment and federal prosecution. She did not mince words, nor did she attempt to shift culpability. While her out of character actions may have caused her to lose her practice and her home, her actions in no way change how I feel about her as that person with the utmost character, integrity, responsibility, compassion and forgiveness. Ania Lowenthal has made mistakes and she constantly expresses remorse for the same. In my humble opinion, she should be afforded that same forgiveness she exudes on others. I will continue to wholeheartedly trust and support Ania Lowenthal and, despite her recent shortcomings, I am confident she will continue to make amends within the communities she has so thoroughly uplifted over the years.

Judge Carney, I appreciate your consideration in allowing me to provide you with a brief explanation of how Ania Lowenthal has personally enriched my life. It is my pleasure to show her support during this difficult time as she rebuilds her relationships. If you have any questions, please do not hesitate to contact me on my cell

Sincerely,

Rob Rolan

Kate Rolan

**CALIFORNIA CENTRAL DISTRICT COURT CASE # 8:23-CR-00124**

Your Honor, my name is Kate Rolan, I am a wife to a disabled Veteran, and mother to two amazing daughters. I am submitting this letter to you on behalf of Ania Lowenthal regarding her pending matter before your court.

My family and I first met Ania and the Lowenthal family in 2018 while I was working at St. John's Episcopal School, located in Orange County, CA. We immediately bonded as mothers and wives to our severely disabled Veterans who suffer chronic life-threatening illnesses linked to serving this Country in the Gulf War over 20 years ago. She and her husband were actively involved parents at the school, on campus daily to make sure their two children were academically, athletically and socially thriving.

In a time, where I felt all hope was gone because of my husband's illnesses and loss of employment (as a California lawyer), Ania provided me with hope. The resources that Ania provided my family were priceless. Ania, without asking for anything in return, provided emotional/physical support, delivered an abundance of groceries and meals, coordinated outings for my daughters, and she helped us navigate the VA by connecting us with the incomparable Tiereny Center volunteers and resources so that my husband could successfully attain his 100% disability rating and benefits, after years of being denied. My family and I were lost and Ania and the Lowenthal family helped us in a time when life was grim.

Immediately after hearing about Ania's pending situation, she expressed remorse and accountability for what she had done. She wept and felt shameful for her actions. She did not deflect, rather she took full and sole responsibility for her actions. I have known Ania as a shining light, but with this significant mistake she looked broken. This is completely out of character for Ania. Of course, she was immediately apologetic, but I saw a fear in my dear friend that scared me. This poor error in judgment has cost her to lose her law practice, home, friends, and family. Ania has shared with me her emotional and physical abuse from the father. To this day, she cares for her elderly and demented mother without question, even when her mother abandoned the strength to protect Ania as a child and young adult. Ania carries her multi-generational family members on her shoulders.

My family and I pray for Ania as she continues to ask for forgiveness and she strives to rebuild. Thank you very much for allowing me the opportunity to share my thoughts with you. I have so much more I can share, but I want to be respectful of your time. If you have any questions, please do not hesitate to contact me on my cell at '

Sincerely,

Kate Rolan



Everett Denton Knapp, Jr.
Colonel (Retired), U.S. Army
Vice Chairman, Campbell County Veterans Council

January 8, 2024

Honorable Judge Carney:

This letter serves as my personal and professional reference for Ms. Ania Lowenthal. I met Ania in 2018 while I was serving as the Director for the Tierney Center for Veteran Services, Goodwill of Orange County, Tustin CA (2018-2021). During my time at the center, I assisted Orange County veterans and their families with benefits and services. I was introduced to Ms. Ania Lowenthal by Mr. Tom Tierney, who initially founded the center. Ania was very gracious in creating a professional relationship with me over that course of time. Ania is an extremely humble person, who gives her time, care, and resources to those in need in Orange County. She has a servant-heart and maintains her anonymity in her philanthropic work with numerous non-profit organizations across Orange County.

While I was working at the Tierney Center for Veteran Services, Ania ensured our organization received annual funding to support outreach to locate and advocate for veterans and their families, financial support to fund my director position, and the Outreach Supervisor. Over these four years, Ania was instrumental in sustaining the organization's local veteran support without notoriety or expectation of gratitude. Out of her goodness, she chose to serve those who fought our nation's wars on our behalf. There were several occasions where she would embark on community donations for veterans - both business interview clothes and computer (monitors, laptops, &  printers) support, to further our veteran employment outreach.

As a dedicated and loving wife to her husband, David, and mother to Dan and Natalie, Ania continuously demonstrates unconditional love and care for her family.  For decades, her husband's Gulf War Illness has been at the forefront of her mind and helping others like him. She maintained her own professional law business for 18 years, while managing very diverse and complicated real estate portfolios in the era of COVID. She selflessly volunteered her time at her children's school, sports, Girl Scouts, and other extra-curricular activities when they were young and growing. For the past several years, she has acted as caregiver for her elderly mother.

Her contributions and dedication of personal time enabled us to serve others in need. I am humbled to have served with her in caring for our veterans and families.  Her family became very close to mine, and I would trust her with their care. She is the consummate professional in past legal work, philanthropic leadership, and servant-attitude. Her relationship with her God, her family, friends, and the community make her loved by everyone fortunate enough to have the privilege of knowing her. I would fight to work with Ania in any capacity and remain in admiration of her heart and selfless giving.

In our meeting, she came to me & was open with her tax issues before this court. She openly wept and apologized to me for her transgressions & mistakes. I have no reservation that she is truly sorry and that she wants to put these mistakes behind her and continue to work in the Orange County community in areas that need more support for veterans and families.  Ania Lowenthal has and strives to be the best wife, mother, and community supporter. My contact is: (

Sincerely,

Everett Denton Knapp, Jr.
Colonel (Retired) US Army

NEGU

January 4, 2024

His Honor, Judge Carney

Dear Judge Carney,

I am writing this letter to you on behalf of Ania Lowenthal.

I had the honor of meeting Ania in the fall of 2019.  During my initial meeting with her I started to learn about her massive heart for kids impacted by childhood cancer.  I was so encouraged she was not only concerned about the care of kids but finding cures for them.

From this initial meeting, Ania has always showed up to help further our mission to care for and support kids fighting cancer and their families.  Let me give you a few of the many examples of her passion and compassion for these innocent fighters.

Frist, Ania wanted to know how she could help families.  This desire has led her to not only help families we have the honor of supporting with notes of encouragement and personal donations.  Since my first meeting with her, we have received the support to help and encourage over 400 local families impacted by childhood cancer.

Second, Ania would search social media of kids in need and ask if there were ways to help them.  For example, AJ and Cole who are some of our biggest warriors.  Due to her compassion for kids fighting cancer she would tap into her network and find ways to help these special warriors and families in their greatest time of need.

Third, her passion to help families has grown beyond our foundation in very special ways.  For example, she buys and provides fresh produce to families at CHOC and Ronald McDonald House on a weekly basis.  Why?  Because she knows how important fresh food is for families especially those with a child fighting cancer.

Third, Ania has always showed up as an amazing volunteer at our gatherings with a willing spirit and commitment for excellence. As a charity, we desperately depend on our volunteers and Ania is always willing to raise her hand and give her time to our mission.

Finally, I want to speak about "finding a cure".  As a father who has lost a child to cancer, I can't wait for cures to be found.  While that is not our mission, I praise those that choose the mission to concur childhood cancer.  I know through relationships in the medical community, Ania has been instrumental in providing support to those chasing after a cure.  I applaud her and those agents of hope for dedicating their lives to finding cures.  No parent should ever have to see their precious child die before them.



In closing, Ania and I recently met, and she tearfully shared her remorse and deep apologies for the matter at hand.  Ania is a dedicated wife, mother, and friend.  From my time knowing her, I have witnessed a lady with integrity, character, compassion, and passion.  I say with no hesitation, our foundation is stronger due to the love and dedication of Ania Lowenthal.

If you have any questions or wish to talk with me, please feel free to call ....

Sincerely.

Erik Rees
Co-founder, Jessie Rees Foundation



**Ronald McDonald House®**

ORANGE COUNTY

**Keeping Families Close**

To: His Honor, Judge Carney

Dear Judge Carney,

I am writing this letter to you on behalf of Ania Lowenthal. I have known Ania for two years on a professional basis, after being introduced to her by Erik Rees at the Jesse Rees NEGU Foundation. Ania worked with NEGU for several years and wanted to expand her assistance for families with children in hospital care. Ania has been visiting the Ronald McDonald House in Orange County on a weekly basis, dropping off fresh produce, fruit, breads, and pastries every Friday. I see firsthand the drop-offs she makes to all her Friday deliveries and see the direct impact she has made on the lives of children with life threatening diseases. What is even more remarkable about Ania is that she has never once asked for any recognition. In fact, she has demanded anonymity at every turn and when pressed for recognition, passes it off to another organization such as Patriots Paws or NEGU, so that they get the attention and recognition. She is always looking out for ways to bridge the gap between charities that help like-minded causes.

Oftentimes, the families who are with us remain for up to a year. Ania is continuously cognizant of these families and is always looking for ways to brighten their day. Currently, our facility is being upgraded from a 20-unit dorm to a 40-unit housing complex. Ania has been with us every step of the way for the past two years, having visited the site multiple times to discuss future volunteering options, and even going so far as to personally donate brand new furniture to the facility. I have met with Ania's husband, mother, and daughter on many occasions. Each shares the same goal as Ania – to put smiles on the faces of kids who have been dealt an awful hand.

Your Honor, in August of this year, Ania came to my office in tears and asked to have a heart-to-heart talk with me. She told me that in 2016 and 2017 she took money and had just pled guilty to filing fraudulent tax returns for not reporting it. When she told me this, I could see her regret and despair. I spoke with Ania about her crimes, and never once did she place blame on anyone but herself. It would have been very easy to make excuses for her behavior, yet Ania refused to do this. In Ania, I see kindness, compassion, and

Connect with us!

rmhcsc.org/orangecounty  ronaldhouseoc



# Ronald McDonald House®

ORANGE COUNTY

**Keeping Families Close**

selflessness every single week when she shows up. I am familiar with all of the volunteering that Ania does, and I am saddened to learn that I may lose her for a period of time because of her actions. While I hope this is not the case, Ania will always have a place at the Ronald McDonald House Orange County, and we value her partnership.

Finally, I would like to extend the opportunity to discuss Ania and her relationship with our non-profit if you deem it necessary. As I mentioned, Ania has been completely open and honest with me regarding her case before you. I have no reservations submitting this letter to you and do so in good faith.

With the kindest of regards,

*Katie Russell*

*Operations Director.*





December 29, 2023

To The Honorable Judge Carney,

I am writing this letter in support of Ania Lowenthal. I met Ania in 2018 when I came on staff with the Tierney Center for Veteran Services as Veterans Outreach Supervisor. I immediately noted her passion and drive to serve the veteran community and provide financial support to our center in order to do so.

With each meeting, I had the opportunity to get to know Ania on a personal level and was always graced with her humility, support and love. Being a mother myself, we often shared of our children's successes and family adventures, we were able to share the pride we took in them and often spoke of the hope we had for our children's futures. When meeting my daughter, Ania immediately took an interest in her education and offered her support and encouragement in her future nursing career.
Ania's commitment to CHOC Hospital and desire to support the families there, by providing them 150lbs of fresh fruit each week, was just a small token of the love she desired to show for the NICU and cancer treatment programs at CHOC.

Through her time volunteering in the veteran community, Ania has showed up to each event, never taking credit for her financial contributions, and always stood in the background with a servant's heart and desire to make a difference.

Ania came to me and asked me for support, with true remorse and tears in her eyes. She shared her personal family history with me and a deep regret for her actions. I believe Ania is deeply regretful for her decisions. In all of my work, I continue to share with our nation's veterans, who have struggled with transition that, our poor choices do not define who we are as people, but that they are merely learning lessons for a better future. I believe that applies to Ania as well. She is truly a one-of-a-kind soul; caring, compassionate and loving in all she does.

Thank you,

Jade Smith
Veterans Outreach Supervisor



January 5, 2024
Ania Lowenthal

Dear Ania,

On behalf of all of us at The Ecology Center, I would like to acknowledge your family's service and dedication to providing fresh, local, organic fruits and vegetables to some of the most vulnerable members of our community.. We admire your compassion and care for children, families, and nurses at the Children's Hospital of Orange County (NICU and Oncology), families at The Ronald McDonald House, and local Veterans in Orange County (in partnership with Patriots and Paws). This partnership originated in early 2021, and you and your family hand delivered the produce from The Ecology Center to the recipients each week through 2023 (and continuing presently). We enjoyed seeing your whole family at pick ups from the barn on Fridays, and enjoyed hearing stories of how the beautiful fresh fruits and vegetables lightened the spirits of those who received them. You inspire us and we are very grateful for the opportunity to partner in this impactful project.

Since 2021 you and your family hand delivered fresh produce boxes to partners 110 times.
Each weekly visit assisted  95 families in NICU, 50+ in oncology, and 20 at the Ronald McDonald house, (for a total of 165 Orange County children & families weekly, 8250 annually). Each year a total of 250 veteran families were assisted. A total of 21,317 lbs of produce was distributed from 2021 - 2023. Thank you once again for your incredible dedication and collaboration.

With gratitude,
Evan Marks and Team

The Ecology Center



January 4, 2024

This letter will recognize the unwavering support by the Lowenthal family to our NICU since 2021 offering weekly produce and baked goods.

Through these efforts, Ania, David and Natalie Lowenthal (Natalie Sharing Love) have provided offerings in support of 10-15 of our NICU families every week for the past three years.  The support ranges from farm fresh produce boxes to breads and cookies, and the families and staff have appreciated this immensely, especially at a time when COVID disrupted many lives, and later with steep inflation.

It is through efforts like the Lowenthal's that show that our community is cared for by many.

Sincerely,

Eva Esmaeili, MSN, RNC-NIC
(she/her/hers)
Manager, NICU
Manager, PICU
CHOC at Mission Hospital

LONG LIVE CHILDHOOD

 CHOC

1/9/2024

Re: Ania Lowenthal
Donor Letter

It is with grateful hearts that we write this letter on behalf of Mrs. Ania Lowenthal and her family. We have been blessed to receive a generous donation of fruits, pastries and cookies on a weekly basis (50 weeks) since the start of 2023. Every week we have been able to distribute this kind donation to our patients and families in Oncology, reaching 30 plus families on the inpatient unit and 20 plus families on the outpatient unit. Many of our patients undergo cancer treatment and often spend weeks in the hospital and we cannot express what joy it brings to our families when they see us coming through the halls with our fruit cart. Mrs. Lowenthal and her family have made such a great impact on the lives of our patients and families and we truly appreciate their time, commitment and dedication to patient family support. Thank you.

On Behalf of the Cancer Institute/Oncology Department,

Grettel Aumua
Department Assistant
CHOC Children's Hospital



 CHOC

January 3, 2024

Ania,

Thank you for the continued donation of fresh organic produce & baked goods to our NICU families. Our families very much appreciate the time you dedicate to providing them with a variety of fruits. We are grateful to have begun this partnership with you this past June 2023. Our weekly average census is about 80 patients, thank you for serving their needs every week and providing support during their NICU journey.

With great gratitude,

*D. Hurtado*

Diana Hurtado, MS

NICU Family Support Program Coordinator

LONG LIVE CHILDHOOD

January 31, 2024

Dear Judge Carney and Ms. Roberts:

Thank you for allowing me the opportunity to supplement my narrative with the following brief summation of my charitable work and volunteering.

Currently, and for the past 7 years (2017-2024), I have prided myself on being an active member of the OC volunteering community. My husband and two children, and even my mother (when she was in better health), have volunteered with me. Because of my sister's untimely death, and my husband's multiple combat tours, I have focused my efforts on two distinct areas: to reach out to (1) active-duty military and veteran organizations in Southern California and (2) pediatric cancer organizations and children's support centers throughout Southern California.

### *Trabuco Mesa Elementary PTA*

Even before this 7-year period, when my children were younger, volunteering and service were important components of my life, and I used this service to help teach and educate my kids about charity. For example, when my children were at Trabuco Mesa Elementary, a public school, I was an ever-present parent on campus: I was an active member of the PTA and helped weekly in both the computer lab & kindergarten reading groups. Moreover, I volunteered for the "MEET THE MASTERS" program through the Saddleback Unified School District. I scored and graded math exams for two full years (when my kids were in the third grade). I volunteered at PTA events - contributing, sponsoring & setting up and cleaning, headlining and MC'ing 4 bingo nights a year, for several years in a row, with all fundraising proceeds for the PTA. Both my husband and I worked every jog-a-thon the school held. I also regularly participating with my daughters Girl Scout troop & away camps, even accompanying her to San Francisco for her BRIDGE CROSSING. It was, and is, important for me to a present voice for support and affirmation for my own kids because of the lack of this participation from my own parents, during my childhood, because of my parents' 7-day work week commitments.

### *CHOC*

By 2017, I had begun to narrow my charitable focus. Because of my sister's illness and death at age 8, I had a lifelong connection with children's hospitals and children's life-threatening illnesses. So, it made sense that my initial focus was at CHOC children's hospital. My points of contact there were Alison Edgcomb (Senior Director Philanthropy, CHOC Foundation) & Brianne Ortiz (Manager, Cherese Mari Laulhere Child Life Department CHOC). Unfortunately, when I discussed this matter before the Court with the two of them, both were unable to provide me with "character letters" because hospital policy prohibits such opinions. Nevertheless, I met with both Ali & Bri in 2023 personally, one on one, to discuss the matter before the Court and to show my solemn remorse & ask for their forgiveness.

I worked with Ali in the early years to secure research for DIFFUSE INTRINSIC PONTINE GLIOMA (DIPG) – a terminally aggressive pediatric cancer with less than a one-year survival rate. I worked with Bri, intimately, throughout the years to help sponsor adolescent youth advisors (AYA) for teenagers receiving cancer treatment and to bring music therapy into the oncology department. I have helped sponsor, at Christmas time, a toy store where parents could shop for free for their CHOC children. I have also had the utmost privilege and pleasure of volunteering alongside my daughter while we have helped throw a "High School Prom" for teenagers currently receiving cancer treatment.

During the evenings, as I was winding down, I would always look through my Instagram feed to look for children who were in medical crisis. I have followed oncology children who have had multiple relapses - for example AJ (who is currently being treated at CHOC) and Cole (multi-year leukemia treatment) are both fighting cancer & both are the children of veteran/military families. When these warrior children have specific (emergency) needs - even blood donations, I always volunteer to donate & have delivered (anonymously) support through CHOC Foundation or the Jessie Rees Foundation to these children & their parents.

Since Covid, I have been delivering fresh organic fruits, breads, and pastries to both OC CHOC locations. These deliveries constitute 4 different drop-offs at 4 different CHOC departments. Weekly, on Friday, I go the Ecology Center in San Juan Capistrano where I am provided with 150 pounds of bulk fresh fruits. After selecting and inspecting the fruit, I then package this fruit into 5 equal boxes (approx. 30 pounds per box) to be distributed to local hospitals and the Ronald McDonald House.

At CHOC NICU Mission Viejo and CHOC NICU Orange, I deliver 120 lbs. of fresh produce and fruit, 100 rolls and 100 cookies with smiley faces. Likewise, CHOC Outpatient Oncology and CHOC Inpatient Oncology each receive the same quantities. After so many years of drop-offs, the fruit boxes, rolls, and cookies are so well-known that even other hospital departments have begun to inquire about receiving the same. In total, after speaking with Evan Marks at the Ecology center about the amounts (See Ecology Center Letter), 22,000 pounds of fruit have been distributed to CHOC, since I began this effort. Thanks to my CHOC relationships, I am adding Millers Children's Hospital and Rady Children Hospital - where military children are treated for cancer, to my weekly drop offs and volunteering schedule.

Finally, with regards to CHOC, I could not be prouder of my relationship with Dr. Ashley Plant. Dr. Plant, who now practices at Lurie Children's Hospital of Chicago, is a researcher and attending physician in Neuro-Oncology. I have been a part of her team since the day she first wrote up her Phase 1 clinical trial grant proposal in 2018. Not only did this involve financial support, but it also included meetings and constant updates regarding the FDA trials. Recently, Dr. Plant has updated me that her vaccine has been approved to go into actual patient trials. This is a huge step for Neuro-Oncology where the average life expectancy is less than a year.


### *City of Hope*

The City of Hope is a facility that is near and dear to my family. My father-in-law was treated there for almost 3 years until he lost his battle with cancer. I have visited the campus several times meeting researchers & staff, and I have always dedicated myself to their pediatric oncology needs. In 2018, I was fortunate to take part in helping fund a research grant for children suffering from glioblastoma. receive support through medical trials. Now that City of Hope has opened a hospital in Orange County, I am excited about the opportunities to help there.


### *Jessie Rees/NEGU (Never Ever Give Up)*

At the Jessie Rees Foundation, I began my involvement in 2018. There, I had the honor to meet Erik and Stacey Rees, the directors of NEGU. Their local organization was near my home and once I learned of the tragic illness and death of the Rees' daughter at age 11 from DIPG, helping kids with cancer became a piece of my heart. I have volunteered countless times at local & remote events where 300+ joy jars are assembled at a time to be sent directly to children fighting cancer. Weekly, I have

preassembled and packed those jars, locally, at their facility in Irvine & also have hand-packed jars specifically for children (with cancer) on their birthdays, according to their likes and preferences. As I mentioned before, I am always following cancer warriors and try to assist their family when there are relapses & emergency treatments being given. Over 400 families have received direct support so far and I am honored that there have been 1000s of jars made/sent with my help. My daughter, through her school club, even directs handmade cards to these oncology children fighting relapse and I get them to NEGU directly. I have been actively involved with their "Circle of Life" program where NEGU honors a courageous kid and family annually; an event that I will be participating in, this Sunday the 4th, at the Jessie Rees Foundation.

### Ronald McDonald House Orange County

At the Ronald McDonald House in Orange, I meet weekly with Katie Russell, Operations Director, and her staff to see if there are any children and family needs that I can help assist them with or direct them to. Because of my relationships with CHOC and NEGU, a lot of the resources needed at RMHOC can be cross-referred. In addition to the weekly organic food distribution, and holiday support, I am now collaborating with a food nutritionist to come to the House and educate both families and meal volunteers about proper nutrition for not only the kids, but the families as well. The families tend to eat lots of fast food and processed foods during treatment times and hospital stays. Along with their mental health, their physical well-being is essential to the child's recovery. Moreover, with the help of Katie, and a veteran organization, we are now working to help furnish their new 40-unit housing facility, slated to open in May.

### Tierney Center for Veteran Services

In 2018, I was introduced to Tom and Elizabeth Tierney. Tom, like my husband, was former Air Force. He had begun a veteran center inside Goodwill of Orange County via a $1M donation. We immediately began meeting to see how I could participate in helping veterans transition from the battlefield to the boardroom. Tom introduced me to Retired Army Col. Denton Knapp (Director) and Jade Smith (Outreach Supervisor), both of whom were taking on the difficult task of identifying and supporting veterans and their families in Orange County. The primary focus at the Tierney Center is on employment and crisis help. In addition to meeting regularly with Denton to brainstorm how to assist more unemployed & transitioning veterans

and get the Tierney Center brand more known in the community, I began clothing drives (to procure business attire for men and women for interviews) and computer drives (for new veterans to learn computer skills that would eventually produce resumes and jobs). These charitable events produce thousands of pieces of professional clothing, and hundreds of computer components. Without getting into too much detail about what the Tierney Center does, it's important to note that for free, any veteran can get help with education benefits, disability claims, legal issues, service animals, housing, employment, and mental care. If they can't help the veteran (or me when I am referring someone over), then they can direct me to someone who can assist. In fact, I carry dozens of paracord bracelets that have the Tierney Center contact information on them to hand out to any veteran I encounter who may need help. This, primarily, occurs with homeless men in and around the freeways. I try to engage every single one of them, asking if they are veterans, and then I provide them with as much info during the very brief encounters that I can. I am one of their advocates, 365/24/7.

## *Patriots & Paws*

Every Tuesday, I volunteer at Patriots and Paws from opening until closing. This is something that I have been doing for many years. I work directly with founder and Chairman of the Board, Penny Lambright, to assist the southern California veteran community with free household furnishings. Patriots and Paws is a nationally recognized and honored 501(c)(3) that helps thousands of LA and OC vets. The charity provides free furnishings & housewares to veterans. On my weekly volunteer days, I am the "shopper" taking homeless & impoverished veterans (coming in through social services like the VA, US Vets, VLI, Path or the Salvation Army) through the giant warehouse of donated goods. In reality, I am doing more than just "shopping" for the veteran. I am I engaging, inquiring, and actively listening to them to try and extrapolate any data or information that I could use to help them. As the wife of a combat veteran, I am truly aware of the concept that "veterans have a pride issue that prevents them from asking for any type of help." Because of my experiences with my husband's military service and disability, I have a deep connection to their plights and look forward to every Tuesday morning because I know I will be "boots on the ground" for helping and making lifesaving and altering connections for them.

Moreover, every Tuesday a large group of special needs young adults come into the center to volunteer for a few hours. I find the interaction with these other volunteers both humbling and insightful. I enjoy the company of both and the positive impact

they make.  I also volunteered several autumn Saturdays when there were pet adoption events & events helping Anaheim youth, in the name of Patriots & Paws. One such event saw us planning, physically working, and setting up an event that provided over 1200 presents, and 400+ bicycles for impoverished Anaheim children at Orange Grove Elementary School. I could go on and, on all day, about how much I love Patriots and Paws, and how much I appreciate being given the opportunity to volunteer there and assist veterans and am excited that the organization has become so essential to communities that they are now expanding across the nation.

My veteran volunteering doesn't stop there. I'm active with Wreaths Across America, laying wreaths at the cemetery for fallen veterans at El Toro Memorial Park. I volunteer with Operation Help a Hero (feeding 500+ marines at battalion send-offs (several each year), barrack cleaning (when marines return), baby showers for dependents of deployed Marines, and crisis support for emergencies). Last year, I was fortunate to partner with Nate Boyer, former Green Beret and Seattle Seahawk and his charity MVP (Merging Vets and Players) to fundraise for Orange County Veteran Charities that support crisis and employment amongst veterans.

Finally, I am honored to say that recently I have begun a partnership with the Fisher Houses (military homes that provide support to families while a loved one is in the hospital – akin to the Ronald McDonald House, but for the military) to greater my impact. I expect to be adding weekly volunteering there, too.

In conclusion, I would like to thank you for allowing me the opportunity to supplement my narrative. I hope this gives you a better understanding of my charitable endeavors.

With profound respect,

*Ania M. Lowenthal*

Ania M. Lowenthal